IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| MARVELAY, LLC, | : | CHAPTER 7 |
| | : | |
| Debtor. | : | CASE NO.: 18-69019 |
| | : | |
| | : | |
| MARTHA A. MILLER, Chapter 7 Trustee for Marvelay, LLC, | : | |
| | : | |
| | : | ADVERSARY PROCEEDING |
| Plaintiff, | : | NO.: 20-06238 |
| v. | : | |
| | : | |
| SKYDIVE SPACELAND, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**AMENDED COMPLAINT TO AVOID AND RECOVER TRANSFERS**

COMES NOW Martha A. Miller, as the Chapter 7 Trustee ("Trustee" or "Plaintiff") for the bankruptcy estate of Marvelay, LLC ("Marvelay" or "Debtor") and as the plaintiff herein, and hereby files this Amended Complaint to Avoid and Recover Transfers (the "Complaint") against Skydive Spaceland (the "Defendant"). In support of the Complaint, Trustee alleges the following:

<u>JURISDICTION AND VENUE</u>

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334(b) and the Standing Order of Reference of the United States District Court for the Northern District of Georgia. This is a core proceeding under 28 U.S.C. §157(b)(2)(E)(F)(H) & (O).

2. Venue is proper in this district in accordance with 28 U.S.C. § 1409(a).

3.      On November 9, 2018 (the "Petition Date"), Marvelay filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), commencing Case No. 18-68019 (the "Marvelay Bankruptcy Case").

4.      The Trustee was appointed Chapter 7 trustee for Marvelay on or about November 13, 2018, and became permanent trustee following the section 341 meeting of creditors on December 17, 2018.

5.      Defendant is a Texas corporation.

6.      Defendant is subject to the jurisdiction of this Court. Defendant's principal place of business is at the following address: 1611 FM 521, Rosharon, TX  77583. Defendant may be served pursuant to Federal Rule of Bankruptcy Procedure 7004 at the following address or by such other manner as may be proper thereunder: Stephen Boyd, Sr., Registered Agent, PO Box 1121, Rosharon, TX  77583.

<u>GENERAL ALLEGATIONS</u>

7.      Beginning in late 2002, Marvelay's predecessors, insiders, and affiliates (in existence and thereafter formed), including Cary V. Quattrocchi ("C. Quattrocchi"), Benny W. Butler ("Butler"), USSO, LLC ("USSO"), IGOVincent, Inc. ("IGOVincent"), Tapura, Inc. d/b/a Thrillplanet.com ("Tapura"), Adventure Sports, LLC ("Adventure Sports"), Atlanta SC, Inc. ("Atlanta SC"), CASC, Inc. ("CASC"), and Tandora, Inc. ("Tandora") engaged in a scheme using thousands of Internet websites designed to deceive and mislead consumers and competitors.

<u>Arizona Action and First Georgia Action</u>

8.      On August 30, 2005, Skydive Arizona, Inc. ("Skydive Arizona") brought a Lanham Act lawsuit against C. Quattrocchi, Butler, IGOVincent, USSO, CASC, and Atlanta SC (collectively, the "Arizona Action Defendants") in the United States District Court for the District

of Arizona (the "Arizona District Court") asserting claims of (1) False Designation or Origin and Unfair Competition, under Section 43(a) of the Lanham Act, 15 U.S.C. § 1115(a) (false advertising), (2) Trademark Infringement, under 15 U.S.C. § 1125(a) (trademark infringement), and (3) False Designation of Origin and Unfair Competition, under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d) (cybersquatting), Case No. 2:05-cv-02656-MHM (the "Arizona Action").

9.      On May 24, 2007, the State of Georgia sued C. Quattrocchi, Butler, USSO, and Atlanta SC for violating the Georgia Fair Business Practices Act of 1975 in the Superior Court of Fulton County, Georgia, Civil Action Case No. 2007CV134640 (the "First Georgia Action").

10.      On August 18, 2008, in the First Georgia Action, C. Quattrocchi, Butler, USSO, and Atlanta SC entered into a consent order, along with non-parties IGOVincent, Tapura, Adventure Sports, CASC, and Tandora who were added by agreement, wherein they agreed to be enjoined from violating the Georgia Fair Business Practices Act of 1975.

11.      On October 2, 2009, a jury in the Arizona Action awarded $6.6 million to Skydive Arizona against the Arizona Action Defendants.

12.      On March 31, 2010, the Arizona District Court issued an Order in the Arizona Action doubling the jury's award of actual damages and awarding Skydive Arizona attorney's fees.

13.      On April 16, 2010, Skydive Arizona obtained a judgment of more than $10 million in the Arizona Action against the Arizona Action Defendants.

2011 Fraudulent Transfer Case

14.      On July 14, 2011, Skydive Arizona sued Yvonne Crooks Cline, Darlene A. Zdrojewski, Blue Abacus, Inc., C. Quattrocchi, Tandora, USPO LLC, Granter Media, Inc., Clearlane, Inc., Sonic Air, LLC, Plutian LLC, Cascadian LLC, Headband, LLC, Rason, LLC,

Parabolic, LLC, Tetra Helios, LLC, Adventure Sports, USSO, Atlanta SC, CASC, IGOVincent, Lilliam Dejesus, Charles "Chuck" Owen, John Tyler Lawson (collectively, the "2011 Fraudulent Transfer Named Defendants") and Doe Companies 1-10, in the Superior Court of Fulton County, Georgia, Case No. 2011CV203219 (the "2011 Fraudulent Transfer Case"), asserting fraudulent transfer claims against all defendants, a request to pierce the corporate veil as to the corporate defendants, and a civil conspiracy claim against Defendants Yvonne Crooks Cline, Lilliam DeJesus, Charles "Chuck" Owen, and John Tyler Lawson.

15.     On March 12, 2012, following an appeal to the Ninth Circuit, the judgment in the Arizona Action was reduced by $3.5 million back to $6.6 million.

16.     Less than one month later, on April 2, 2012, Marvelay was formed as a Delaware limited liability company.

17.     By order entered November 28, 2012, the Georgia Fulton County Superior Court appointed Nesbit Kendrick as a special master ("Special Master") in the 2011 Fraudulent Transfer Case.

18.     On January 7, 2013, the Special Master entered an order (the "Receivership Order") in the 2011 Fraudulent Transfer Case appointing a receiver to take over intellectual, real and other business properties and processes owned, leased and/or maintained and used by each of the 2011 Fraudulent Transfer Named Defendants and "John Doe" Defendants Astra Quattrocchi ("A. Quattrocchi"), Bilateral, LLC, and Camorin, LLC, in the conduct of a business or businesses. The assets subject to the Receivership Order included:

(a)     improved real property located at 2593 Due West Road, Kennesaw, Georgia (the "Due West Office");

4

(b)     phone numbers leased from various providers used in the operation of a call center located at or managed from the Due West Office;

(c)     over a thousand internet web domains licensed to various companies by various internet domain providers;

(d)     credit card merchant account(s) and other banking accounts;

(e)     accounts receivable, deposits, cash, lines of credit and other working capital;

(f)     contracts and other agreements with internet advertisers such as Groupon.com;

(g)     computers, copiers, furniture and other business equipment located at the Due West Office or otherwise used in connection with any of the businesses subject to the Receivership Order;

(h)     accounting and other business records located at the Due West Office or otherwise maintained in connection with any of the businesses subject to the Receivership Order; and

(i)     all other tangible and intangible property used by any entity doing business at the Due West Office.

19.     Also on January 7, 2013, IGOVincent, one of the 2011 Fraudulent Transfer Named Defendants, filed a petition under Chapter 7 of Title 11 of the Bankruptcy Code, commencing Case No. 13-50396, in the United States Bankruptcy Court for the Northern District of Georgia.

20.     Also on January 7, 2013, CASC, one of the 2011 Fraudulent Transfer Named Defendants, filed a petition under Chapter 7 of Title 11 of the Bankruptcy Code, commencing Case No. 13-50398, in the United States Bankruptcy Court for the Northern District of Georgia.

5

21.     After Marvelay's formation and through the Petition Date, Marvelay did business under various "doing business as" names or dbas including "Gadzuk," "Thrillant," "Thrillations" "Spot Reservation," and "Rushcube."

22.     Prior to the Petition Date, Marvelay's principal place of business was 2601 Summers Street, Kennesaw, Cobb County, Georgia 30144 ("Marvelay's Main Office"), which is the same location as the Due West Office. Specifically, the address 2601 Summer Street, Kennesaw, Georgia was formerly 2593 Kennesaw Due West Road, Kennesaw, Georgia. The address was changed from 2593 Kennesaw Due West Road to 2593 Summer Street sometime between 2013 and 2014, and was then changed to 2601 Summer Street in 2015.

ALLEGATIONS REGARDING MARVELAY'S DECEPTIVE
AND UNFAIR BUSINESS PRACTICES

23.     After Marvelay's formation in 2012, Marvelay engaged in a scheme, started by Marvelay's predecessors, insiders and affiliates beginning in late 2002, to defraud and deceive consumers into purchasing adventure and leisure experiences through deceptive, misleading and fraudulent marketing practices. A significant majority of Marvelay's consumers were victims of the scheme as a result of the scheme's willful and systematic misappropriation of intellectual property rights of locally based businesses through the use of sales practices and thousands of websites designed to trick the consumer into believing they were making a purchase from an actual operating business as opposed to making a purchase through an agent with a substantial markup. Over the course of the scheme, there were hundreds of thousands of consumer victims, at least 60,000 of whom were victimized within the four years prior to the Petition Date (the "Relevant Period"), and hundreds of small business victims, resulting in tens of millions of dollars of claims against Marvelay.

Marvelay's Scheme

24.     Marvelay controlled thousands of domain names either directly or indirectly through affiliates. Many of these domain names were associated with websites which offered certain goods and services to consumers under a fictitious business name, including skydiving, ballooning, or other adventure or leisure activities.

25.     At least 900 of these domain names included a description of activities and a specific geographic location.

26.     Using the names of states and major cities throughout the United States as domain names, Marvelay, its insiders, and affiliates configured websites to include descriptions and representations that would lead an unknowing consumer to believe that he or she had accessed and was viewing a website for an actual skydiving center, ballooning site, or adventure or leisure activity located in that particular city or geographic area.

27.     These websites provided the consumer with a telephone number to call to make a reservation or to purchase a gift certificate or voucher for an activity, including skydiving jumps and balloon rides. The hundreds of numbers that could be found throughout the thousands of websites controlled by Marvelay, its insiders, and affiliates did not connect the consumer with the advertised fictitious business purportedly located in the areas of the advertised activity. Instead, these numbers all rang into a single phone bank located at Marvelay's Main Office, formerly the Due West Office address.

28.     These websites Marvelay owned or controlled contained false and misleading representations about Marvelay's identity and the services Marvelay provided.

7

29.     Marvelay did not actually provide any activities for which it purported to make reservations or sold gift certificates and vouchers; instead, these activities were provided by affiliates and third-party vendors, including the Defendant.

30.     Marvelay was not, and had no intention of being, the actual provider of the advertised activities, including the activities provided by Defendant.

31.     Using Search Engine Optimization (SEO) techniques, fictitious reviews on third party websites, fictitious websites, advertising, and online marketing, Marvelay positioned websites it controlled to appear high on the list of results returned by search engines for a variety of activities in a wide range of locations throughout the United States, including the 20 largest major metropolitan areas in the country, excluding only Phoenix, Arizona due to the injunction in the Arizona Action.

32.     The information and representations on the websites Marvelay owned or controlled made it appear to consumers that the advertised activity would be performed by the business named in the website and in a specific location, when that business did not exist.

33.     The websites Marvelay owned or controlled also contained misappropriated content, including photos and text, from the websites of actual service providers of the advertised activities. Such content was misappropriated by Marvelay and used on websites it owned or controlled in a way that was likely to cause confusion and to deceive consumers into believing Marvelay provided services in specific geographic locations.

34.     When a consumer, after calling or contacting Marvelay as a result of the consumer's website search, agreed to purchase a service, the consumer's credit card was charged, and the consumer was sent a gift certificate or voucher.

35.     The consumers were not aware that they had purchased a service from Marvelay until after they provided payment information and payment was processed.

36.     In many instances, Marvelay sold gift certificates and vouchers for activities advertised in specific geographical locations for which there were no third-party vendors available in the advertised location. Instead of offering refunds when requested, Marvelay attempted to make reservations for consumers in locations that were a considerable distance away from the advertised location.

37.     Marvelay misrepresented and/or failed to inform consumers of material terms and conditions of the purchase of services, gift certificates or vouchers, including but not limited to refund and cancellation policies.

38.     In many instances, Marvelay failed to secure reservations for consumers for the services purchased.

39.     In many instances, in order to obtain the consumer's permission to charge their credit card, Marvelay misrepresented to the consumer that they had a confirmed reservation at a specified location and time and then later informed the consumer that the reservation location had changed considerably.

40.     In many instances, even where Marvelay contacted a vendor and made a reservation on behalf of the consumer, Marvelay was unresponsive or unable to provide service when consumers attempted to reschedule their reservation as a result of bad weather, overbooking, or a consumer change in schedule.

41.     Agents and employees of Marvelay posted favorable reviews of Marvelay's imaginary businesses on 3rd party websites including Google.com, Trip Advisor, Trustpilot, and Yelp. These reviews falsely stated or implied that agents and employees of Marvelay personally

used the services offered by these businesses. The sham reviews bolstered the false impression that Marvelay's nonexistent businesses provided services to consumers at a specific geographical location.

42.     Marvelay made representations on its websites and in reviews that had the tendency or capacity to mislead or confuse consumers into believing that consumers could contact a local business that would provide the activity sought by the consumer, when in fact the consumer was dealing with a business located in Georgia that did not provide any of the advertised activities.

43.     Marvelay, through reviews and websites promoting fictitious business entities, made numerous misrepresentations and material omissions to consumers for the purpose of fraudulently inducing consumers to purchase goods and services, including but not limited to:

(a)     that Marvelay had verified the dates and times consumers requested for their purchased activities, prior to processing payments from consumers;

(b)     that consumers could participate in activities within specified cities, when in fact the advertised activity could not be provided within those cities or within a reasonable distance from those cities;

(c)     providing consumers with false information regarding activity descriptions, activity lengths, and arrival times;

(d)     that gift certificates and vouchers could be redeemed for activities in advertised locations when the activities were not available in the advertised locations; and

(e)     omitting the fact that Marvelay was acting as a booking and referral service and charging a substantial markup to the consumer for the service purchased.

44.    Based on all of the foregoing, Marvelay engaged in systematic fraudulent, unfair, and deceptive acts or practices with respect to consumers.

45.    Marvelay's conduct was fraudulent as to each consumer who used Marvelay as a booking agent or to purchase a gift certificate or voucher for services.

46.    Marvelay's conduct illegally infringed on the intellectual property rights of each service provider that did not accept Marvelay's advertising and gift certificates or vouchers and operated a service in the geographic location and industry where Marvelay advertised through its false and misleading websites. Each such service provider has claims against Marvelay (1) for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1115(a), (2) for trademark infringement under 15 U.S.C. § 1125(a), and (3) for cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

Second Georgia Action

47.    On March 6, 2014, the State of Georgia sent "Spot Reservation" an Investigative Demand.

48.    The State of Georgia thereafter determined that "Spot Reservation" was a dba name used by Marvelay and issued an Investigative Demand to Marvelay on July 10, 2014.

49.    In April 2015, the State of Georgia issued to Marvelay its first Notice of Contemplated Legal Action pursuant to O.C.G.A. §§ 10-1-397(c), but Marvelay refused to enter into an agreement that would resolve the investigation.

50.    On July 18, 2017, the State of Georgia sued Marvelay, Erran Yearty ("Yearty"), A. Quattrocchi, Thomas Rickey Bray Jr., and Falken, LLC d/b/a Trident Technology (collectively, the "Second Georgia Action Defendants") under the Georgia Fair Business Practices Act,

11

O.C.G.A. §§ 10-1-390 *et seq.* ("Georgia FBPA"), in the Superior Court of Cobb County, Georgia, Case No. 17-1-5434-58 ("Second Georgia Action").

51.    As a part of discovery in the Second Georgia Action, the State of Georgia served the Second Georgia Action Defendants, including Marvelay, with two requests for documents, seeking among other things, the production of certain sales calls recordings between Marvelay and consumers.

52.    In response to the production request, on February 12, 2018, the Second Georgia Action Defendants, including Marvelay, delivered a hard drive, which purported to contain the requested sales calls recordings, to an investigator for the State of Georgia. The State of Georgia had difficulty retrieving the information from the hard drive, and as a result, the State of Georgia hired a computer forensics expert to analyze the data contained therein.

53.    After a chance to inspect the hard drive, the State of Georgia's expert concluded that the hard drive in question was intentionally wiped using specialized software prior to being turned over to the State of Georgia so that its data could not be viewed or retrieved, despite the duty to turnover this information in full.

54.    In addition to this spoliation of the evidence stored on the hard drive, Marvelay regularly abused the discovery process throughout the Second Georgia Action, including, but not limited to, Marvelay's refusal to produce certain vital information requested by the State of Georgia, and failure to meaningfully respond to questioning under oath at depositions.

55.    In response to Marvelay's multiple discovery abuses, on June 29, 2018, the State of Georgia filed a Motion for Sanctions in the State Court Action (the "First Sanctions Motion"). While this first motion was pending, on August 9, 2018, the State of Georgia filed a Second Motion for Sanctions and corresponding Brief, requesting that the state court strike Marvelay's Answer

from the record, and exclude all arguments and evidence that Marvelay would attempt to present concerning the spoliated telephone calls (the "Second Sanctions Motion").

56.     On October 11, 2018, the Cobb County Superior Court in the Second Georgia Action entered its Order granting the First Sanctions Motion which, *inter alia*, required certain of the Second Georgia Action Defendants, including Marvelay, to supplement their discovery responses by November 12, 2018, to provide additional information for each of their websites.

57.     Three days before the supplemental discovery responses were due, on November 9, 2018, Marvelay filed its voluntary Chapter 7 petition, initiating the Marvelay Bankruptcy Case.

58.     On December 4, 2018, the Bankruptcy Court entered an Order finding that Marvelay's bankruptcy filing did not stay the Second Georgia Action.

59.     On December 17, 2018, the Cobb County Superior Court in the Second Georgia Action entered its Order granting the Second Sanctions Motion, holding that, *inter alia*, due to the discovery abuses, including the spoliation of evidence, the Answers of Marvelay, E. Yearty, and A. Quattrocchi were stricken from the record. As a result, on January 10, 2018, an entry of default was made in the Second Georgia Action as to Marvelay, Yearty and A. Quattrocchi.

60.     Thereafter, on July 29, 2019, an Order was entered against Marvelay in the Second Georgia Action, which was consented to by the Trustee and entered after the Trustee obtained approval from the Bankruptcy Court (the "Consent Order"). The Consent Order granted judgment against Marvelay and in favor of the State of Georgia in the amount of: (i) $11,405,000.00 for civil penalties; (ii) $14,232,210.00 for restitution; and (iii) $362,790.00 for attorney's fees and costs. Such amounts have been allowed as general, unsecured claims of the State of Georgia in the Marvelay Bankruptcy Case.

Marvelay's Transactions with Consumers

61.    Prior to the Petition Date, substantially all Marvelay's revenue was derived from transactions with consumers obtained through (i) fraud as to the consumer and (ii) unfair and deceptive practices in violation of the Georgia FPBA.

62.    Each transaction between Marvelay and a consumer was fraudulent and violated the Georgia FBPA, Federal Trade Commission Act, and other applicable law.

63.    Each transaction between Marvelay and a consumer resulted in liability for Marvelay in excess of the revenue received from the transaction, because the transaction created fraud claims of the consumer which included restitution and civil penalties as a result of the transaction's violation of the Georgia FBPA.

64.    Marvelay received less than a reasonably equivalent value in exchange for each of the Two-Year Fraudulent Transfers and the Four-Year Voidable Transfers (both as defined below) made to the Defendant.

65.    A significant number of Marvelay's transactions with consumers infringed on the intellectual property rights of service providers that did not accept Marvelay's advertising and gift certificates or vouchers and operated a service in the geographic location and industry where Marvelay advertised through its false and misleading websites. Each such transaction resulted in claims of the service providers against Marvelay and violated applicable law, including the Federal Trade Commission Act, the Sherman Antitrust Act, the Clayton Act, and the Lanham Act.

66.    During the Relevant Period, Marvelay was insolvent because Marvelay was committing fraud and violating the Georgia FPBA or similar consumer protection statutes under Federal or other state law with each consumer transaction, and transactions with consumers accounted for substantially all of Marvelay's revenue.

14

67.    Marvelay's insolvency was further increased by each consumer whose purchase of services from Marvelay had been obtained through Marvelay's infringing on the intellectual property rights of vendors who were unwilling to transact business with Marvelay.

68.    Marvelay made each of the Two-Year Fraudulent Transfers and the Four-Year Voidable Transfers (collectively, the "Transfers") to Defendant with the actual intent to hinder, delay or defraud Marvelay's consumer creditors by continuing its practice of systematic fraudulent, unfair and deceptive acts or practices, including but not limited to, disguising Marvelay's true identity and geographic location, misrepresenting the services it actually provided, concealing its role as a broker and its charging additional fees beyond what, if anything, it paid to the actual provider of the goods or services in instances where the consumer actually received goods and services, providing false information to consumers to induce consumers to pay for activities, posting favorable reviews of fictitious businesses on the Internet, failing to inform consumers of material terms and conditions related to activities, and failing to take the action necessary to ensure that consumers were able to participate in the activities consumers purchased or to provide refunds if the activity would not or could not be provided as represented.

### ALLEGATIONS REGARDING DEFENDANT'S KNOWLEDGE OF MARVELAY'S DECEPTIVE AND UNFAIR BUSINESS PRACTICES

69.    Defendant provided services to consumers referred by Marvelay.

70.    Defendant knew or should have known that Marvelay obtained the referred consumers by using fraudulent, unfair, and deceptive business practices and by infringing on the intellectual property rights of Defendant's competitors in violation of applicable law.

71.    Marvelay's deceptive and unfair business practices were widely known by drop zones in the skydiving and ballooning community by virtue of the following:

(a)     Consumer complaints and review boards widely available on the internet in which consumers complained of the fraudulent, unfair and deceptive business practices of Marvelay towards consumers, including, without limitation the following;

    i.     that the consumer had been told that the activity was available within a specified geographic location, but after the purchase of the gift certificate voucher the consumer was told the activity could not be provided within a reasonable distance of the specified geographic location;

    ii.     false information regarding activity descriptions, activity lengths, and arrival times;

    iii.     charging substantial undisclosed fees for booking in excess of the price charged directly by the service provider to consumers;

    iv.     charging the consumer for non-existent services; and

    v.     failing to disclose to consumers that purchases were non-refundable and vouchers expired in 2 years;

(b)     Websites and associated blogs and discussion forums in the skydiving and ballooning community which described and identified the false and deceptive conduct of Marvelay towards consumers; and

(c)     Websites and associated blogs and discussion forums in the skydiving and ballooning community which described and identified the conduct of Marvelay infringing on the intellectual property rights of operators of drop zones and hot air balloons.

16

72.     Consumers of Marvelay filed hundreds of complaints with federal and state authorities, non-profit organizations and consumer scam websites complaining about transactions procured by Marvelay d/b/a Spot Reservation and Rushcube using fraudulent, unfair, and deceptive practices.

73.     The Business Bureau of Metro Atlanta, Athens, and Northeast Georgia ("BBB") received ninety (90) complaints against the trade name Spot Reservation from the time period including April 19, 2013 through October 19, 2015, and one hundred thirty-five (135) complaints against the trade name Rushcube from the time period including April 13, 2015 through May 10, 2018.

74.     Reviews on Marvelay under the tradename Rushcube posted on Trustpilot.com included 109 one-star reviews out of 875 reviews on a five-star system.

75.     Bad reviews of Marvelay under the tradename Rushcube were also on Yelp.com including 134 negative posted review. Of the 72 rated reviews, 65 were negative.

76.     Based on how widely known Marvelay's deceptive and unfair business practices were, Defendant was aware of or should have been aware of the fraudulent, unfair, and deceptive trade practices used by Marvelay in its transactions with consumers.

77.     During the Relevant Period, drop zones were regularly used for skydiving from airplanes and for skydiving from hot air balloons as well as a location for launching hot air balloon flights.

78.     During the Relevant Period, there were approximately 350 drop zones in the United States.

79.     As a direct result of the widespread knowledge of Marvelay's fraudulent, unfair, and deceptive practices, many drop zones in the United States refused to accept referrals, gift

certificates or vouchers from consumers who had purchased from Marvelay through Rushcube.com and SpotReservations.com.

80.     As a direct result of the widespread knowledge of Marvelay's fraudulent, unfair, and deceptive practices, many ballooning companies in the United States refused to accept referrals, gift certificates or vouchers from consumers that had purchased from Marvelay through Rushcube.com, SpotReservations.com and Adventure Outdoors.

81.     Even including drop zones who were affiliates of Marvelay, less than 50 drop zones in the United States accepted referrals, gift certificates or vouchers from consumers that had paid Marvelay using Rushcube.com and SpotReservations.com.

82.     Nevertheless, under the partner/affiliate program of Marvelay, Defendant accepted referral of or vouchers or gift certificates from consumers of Marvelay and provided services to consumers who had booked the experience with Marvelay through Marvelay's fraudulent, unfair, and deceptive acts.

83.     At or prior to the time a service was rendered by Defendant to a consumer referred by Marvelay, the consumer would present a gift certificate or voucher with a certificate number issued by Marvelay to Defendant.

84.     Therefore, at the time Defendant provided a service to a consumer referred by Marvelay, Defendant knew that the consumer had been referred by Marvelay.

85.     After providing the service to the consumer referred by Marvelay, Defendant submitted a redemption form to Marvelay in connection with the service provided.

86.     The redemption form had the Rushcube name and logo on it. The redemption form identified the consumer who had paid Marvelay a price for the service in excess of the price that

18

Defendant would have charged to the consumer had the consumer booked directly with the Defendant.

87.     The redemption form was submitted by the Defendant to Marvelay by email or by fax.

88.     Included in the redemption form was a certificate for each consumer.

89.     The certificate identified each consumer by name, included a schedule date and time, and a description of the service.

90.     For the Defendant to obtain payment from Marvelay, the certificate was signed by the consumer with a verification that the services had been rendered.

91.     The redemption form identified Defendant as a partner of Marvelay and identified the consumer who had been referred and to whom Defendant had provided services.

92.     At the time Defendant provided the service, accepted the voucher or gift certificate, submitted the redemption form, and received each of the Transfers from Marvelay, Defendant was aware or should have been aware of the following:

      (a)     That the consumer paid Marvelay more for the service Defendant provided to the consumer than the price charged by Defendant to a consumer who booked directly with Defendant;

      (b)     That this price differential was not disclosed to the consumer;

      (c)     That the consumer was misled as to the location and ownership of Defendant;

      (d)     That Marvelay used fraudulent, deceptive, and unfair practices to obtain payment from the consumer;

(e)    That gift certificates and vouchers had a two-year expiration date in violation of applicable law; and

(f)    That Defendant and Marvelay were infringing on the intellectual property rights of operators of drop zones and hot air balloons who refused to accept gift certificates and vouchers from Marvelay.

93.    Defendant should have known about, or knowingly participated in, the fraudulent, unfair, and deceptive acts to the affected consumer to obtain payment from Marvelay.

94.    As a result of Defendant's actual or constructive knowledge and active participation in the providing of services to the consumer with such knowledge, Defendant's receipt of the Transfers was not in good faith.

<u>THE TRANSFERS</u>

<u>The 90-Day Preferential Transfers</u>

95.    On or within 90 day before the Petition Date, Marvelay made payments of at least $1,890.00 in avoidable transfers to or for the benefit of Defendant (collectively, the "90-Day Preferential Transfers"). The 90-Day Preferential Transfers include those transfers set forth and identified as the 90-Day Preferential Transfers on Exhibit A attached hereto and incorporated herein.

96.    Based upon the Trustee's reasonable due diligence under the circumstances of this case and the foregoing allegations, Defendant has no known or reasonably knowable affirmative defenses to the 90-Day Preferential Transfers.

97.    The 90-Day Preferential Transfers are avoidable and recoverable under sections 547, 550(a), and 551 of the Bankruptcy Code.

<u>The Two-Year Fraudulent Transfers</u>

98.     On or within two years before the Petition Date, Marvelay made payments of at least $67,853.00 in avoidable transfers to or for the benefit of Defendant, all of which were made by Marvelay in connection with its scheme to defraud consumers (collectively, the "Two-Year Fraudulent Transfers"). The Two-Year Fraudulent Transfers include those transfers set forth and identified as the Two-Year Fraudulent Transfers on Exhibit A.

99.     The Two-Year Fraudulent Transfers are avoidable and recoverable under sections 548, 550(a), and 551 of the Bankruptcy Code.

<u>The Four-Year Voidable Transfers</u>

100.    During the four years prior to the Petition Date, Marvelay made payments of at least $285,628.00 in avoidable transfers to or for the benefit of Defendant, all of which were made by Marvelay in connection with its scheme to defraud consumers (collectively, the "Four Year Voidable Transfers"). The Four-Year Voidable Transfers include those transfers set forth and identified as the Four-Year Voidable Transfers on Exhibit A.

101.    The Four-Year Voidable Transfers are avoidable and recoverable under sections 544, 550(a), and 551 of the Bankruptcy Code and Sections 18-2-74, 18-2-75 and 18-2-77 of the Georgia Code.

<u>REQUEST FOR RELIEF</u>

102.    The Trustee's investigation is on-going, and therefore the Trustee reserves the right to: (i) supplement the transfers set forth on Exhibit A; and (ii) seek recovery of such additional transfers.

COUNT I
Claim for Preference
− 11 U.S.C. §§ 547, 550(a) and 551

103.    The Trustee repeats and re-alleges the allegations contained in all of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

104.    To the extent this recovery count may be inconsistent with or duplicative of any other count, it is to be treated as being pleaded in the alternative to the extent of the inconsistency or duplication.

105.    Marvelay made the 90-Day Preferential Transfers on or within the ninety days before the Petition Date.

106.    The 90-Day Preferential Transfers were each a transfer of an interest of Marvelay in property.

107.    The 90-Day Preferential Transfers were made to or for the benefit of the Defendant, for or on account of antecedent debt Defendant alleged to be owed by Marvelay before the 90-Day Preferential Transfers were made.

108.    The 90-Day Preferential Transfers were made while Marvelay was insolvent.

109.    The 90-Day Preferential Transfers enabled Defendant to receive more than it would receive if the case of Marvelay had been under Chapter 7 of the Bankruptcy Code, the 90-Day Preferential Transfers had not been made, and the Defendant had received payment of such alleged debts to the extent provided by the provisions of the Bankruptcy Code.

110.    Accordingly, pursuant to Sections 547, 550(a) and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the 90-Day Preferential Transfers; (b) directing that the 90-Day Preferential Transfers be set aside; (c) recovering the 90-Day

22

Preferential Transfers, or the value thereof, from the Defendant for the benefit of Marvelay's

estate; and (d) any other relief deemed just and appropriate.

<u>COUNT II</u>
Claim to Avoid and Recover Transfers Made with Actual Intent
to Hinder, Delay or Defraud
– 11 U.S.C. §§ 548(a)(1)(A), 550(a) and 551

111.    The Trustee repeats and re-alleges the allegations contained in all of the preceding

paragraphs of this Complaint as if the same were fully set forth herein at length.

112.    To the extent this recovery count may be inconsistent with or duplicative of any

other count, it is to be treated as being pleaded in the alternative to the extent of the inconsistency

or duplication.

113.    Marvelay made the Two-Year Fraudulent Transfers to or for the benefit of the

Defendant.

114.    Marvelay made the Two-Year Fraudulent Transfers on or within two years before

the Petition Date.

115.    The Two-Year Fraudulent Transfers were each a transfer of an interest of Marvelay

in property within the meaning of Sections 101(54) and 548(a) of the Bankruptcy Code.

116.    The confluence of the above-mentioned facts shows that Marvelay made the Two-

Year Fraudulent Transfers with actual intent to hinder, delay or defraud creditors of Marvelay to

which Marvelay was or became, on or after the date that such transfers were made or such

obligations were incurred, indebted.

117.    Based upon the foregoing, the Two-Year Fraudulent Transfers made by Marvelay

to the Defendant constitute avoidable fraudulent transfers pursuant to Section 548(a)(1)(A) of the

Bankruptcy Code.

118.    Accordingly, pursuant Sections 548(a), 550(a) and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Two-Year Fraudulent Transfers; (b) directing that the Two-Year Fraudulent Transfers be set aside; (c) recovering the Two-Year Fraudulent Transfers, or the value thereof, from the Defendant for the benefit of Marvelay's estate; and (d) any other relief deemed just and appropriate.

<u>COUNT III</u>
Claim to Avoid and Recover Voidable Transfers Made with Actual Intent
to Hinder, Delay or Defraud
– O.C.G.A. §§ 18-2-74 and 18-2-77 and U.S.C. §§ 544, 550(a) and 551

119.    The Trustee repeats and re-alleges the allegations contained in all of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

120.    To the extent this recovery count may be inconsistent with or duplicative of any other count, it is to be treated as being pleaded in the alternative to the extent of the inconsistency or duplication.

121.    Marvelay made the Four-Year Voidable Transfers to or for the benefit of the Defendant.

122.    Marvelay made the Four-Year Voidable Transfers within four years of the Petition Date.

123.    The Four-Year Voidable Transfers were made with actual intent to hinder, delay, or defraud creditors of Marvelay to which Marvelay was or became, on or after the date that such transfers were made or such obligations were incurred, indebted.

124.    During the Relevant Period, in the four years preceding the Petition Date, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against Marvelay, including numerous consumers with state law fraud claims. These claims

24

against Marvelay were and are allowable under Section 502 of the Bankruptcy Code or were and are not allowable only under Section 502(e) of the Bankruptcy Code.

125.    Each of the Four-Year Voidable Transfers constituted a transfer of an interest of Marvelay in property within the meaning of Sections 101(54) and 548(a) of the Bankruptcy Code.

126.    Accordingly, pursuant to Sections 18-2-74 and 18-2-77 of the Georgia Code and Sections 544, 550(a) and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Four-Year Voidable Transfers; (b) directing that the Four-Year Voidable Transfers be set aside; (c) recovering the Four-Year Voidable Transfers, or the value thereof, from the Defendant for the benefit of Marvelay's estate; and (d) any other relief deemed just and appropriate.

## COUNT IV
Claim to Avoid and Recover Constructive Fraudulent Transfers
– 11 U.S.C. §§ 544, 548(a), 550(a) and 551, and O.C.G.A. §§ 18-2-74, 18-2-75, and 18-2-77

127.    The Trustee repeats and re-alleges the allegations contained in all of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

128.    To the extent this recovery count may be inconsistent with or duplicative of any other count, it is to be treated as being pleaded in the alternative to the extent of the inconsistency or duplication.

129.    Marvelay made the Transfers to or for the benefit of the Defendant.

130.    Marvelay made the Two-Year Fraudulent Transfers on or within two years before the Petition Date and the Four-Year Voidable Transfers within four years of the Petition Date.

131.    During the Relevant Period, in the four years preceding the Petition Date, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against Marvelay, including numerous consumers with state law fraud claims. These claims

25

against Marvelay were and are allowable under Section 502 of the Bankruptcy Code or were and are not allowable only under Section 502(e) of the Bankruptcy Code.

132.    Each of the Transfers was a transfer of an interest of Marvelay in property within the meaning of Sections 101(54) and 548(a) of the Bankruptcy Code.

133.    Marvelay received less than a reasonably equivalent value, or did not receive fair consideration, in exchange for each of the Transfers.

134.    Marvelay was insolvent at the time of each of the Transfers and/or was rendered insolvent as a result of the Transfers in that Marvelay's liabilities exceeded its assets; or Marvelay was engaged in business or a transaction for which any property remaining with Marvelay was an unreasonably small capital at the time of or as a result of each of the Transfers; or Marvelay intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured at the time of each of the Transfers.

135.    Based upon the foregoing, the Transfers made by Marvelay to the Defendant constitute avoidable fraudulent transfers pursuant to Section 548(a) of the Bankruptcy Code and Georgia law.

136.    Accordingly, pursuant to Sections 548(a), 550(a) and 551 of the Bankruptcy Code and Sections 18-2-74, 18-2-75, and 18-2-77 of the Georgia Code along with Sections 544, 550(a) and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Transfers; (b) directing that the Transfers be set aside; (c) recovering the Transfers, or the value thereof, from the Defendant for the benefit of Marvelay's estate; and (d) any other relief deemed just and appropriate.

WHEREFORE, Trustee respectfully requests that the Court enter judgment in favor of the Trustee and against the Defendant:

(a)      declaring that the 90-Day Preferential Transfers constitute avoidable preferential transfers pursuant to Section 547 of the Bankruptcy Code;

(b)      avoiding the 90-Day Preferential Transfers, and directing and ordering that the Defendant return to the Trustee, pursuant to Section 550 of the Bankruptcy Code, the full value of the 90-Day Preferential Transfers and awarding judgment against the Defendant in an amount equal to the 90-Day Preferential Transfers;

(c)      declaring that the Transfers constitute avoidable fraudulent transfers pursuant to Section 548(a) of the Bankruptcy Code;

(d)      declaring that the Transfers constitute avoidable fraudulent transfers pursuant to O.C.G.A. §§ 18-2-74, 18-2-75, and 18-2-77;

(e)      preserving the Transfers for the benefit of Marvelay's estate pursuant to Section 551 of the Bankruptcy Code;

(f)      avoiding the Transfers, and directing and ordering that the Defendant return to the Trustee, pursuant to Sections 544 and 550 of the Bankruptcy Code and O.C.G.A. §§ 18-2-77 and 18-2-78, the full value of the Transfers and awarding judgment against the Defendant in an amount equal to the Transfers; and

(g)    granting to the Trustee such other and further or alternative relief as may be just

and proper, including costs.

Respectfully submitted this 30th day of December, 2020.

LAMBERTH, CIFELLI, ELLIS
& NASON, P.A.
*Counsel for Trustee*

By: ___/s/ Gregory D. Ellis_____
Gregory D. Ellis
Georgia Bar No. 245310
gellis@lcenlaw.com

6000 Lake Forrest Drive, N.W., Ste. 435
Atlanta, GA 30328
(404) 262-7373

PORTNOY, GARNER & NAIL, LLC
*Special Counsel for Trustee*

By: ___/s/ Garrett A. Nail_____
Garrett A. Nail
Georgia Bar No. 997924
gnail@pgnlaw.com

3350 Riverwood Pkwy, Suite 460
Atlanta 30339
(404) 688-8800

# EXHIBIT A
# SKYDIVE SPACELAND

| 90-DAY PREFERENTIAL TRANSFERS 08/10/2018-11/09/2018 | | TWO-YEAR FRAUDULENT TRANSFERS 11/08/2016-11/09/2018 | | FOUR-YEAR VOIDABLE TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
| 11/2/2018 | $ 1,890.00 | 11/15/2016 | $ 5,215.00 | 11/10/2014 | $ 1,030.00 |
| | | 11/28/2016 | $ 2,485.00 | 11/17/2014 | $ 2,415.00 |
| | | 12/12/2016 | $ 4,620.00 | 12/12/2014 | $ 1,435.00 |
| | | 1/26/2017 | $ 3,675.00 | 12/16/2014 | $ 2,395.00 |
| | | 2/22/2017 | $ 3,185.00 | 1/21/2015 | $ 4,320.00 |
| | | 4/3/2017 | $ 5,885.00 | 1/26/2015 | $ 1,330.00 |
| | | 5/25/2017 | $ 7,245.00 | 1/26/2015 | $ 455.00 |
| | | 6/2/2017 | $ 2,135.00 | 2/9/2015 | $ 980.00 |
| | | 6/27/2017 | $ 4,025.00 | 2/9/2015 | $ 2,660.00 |
| | | 7/19/2017 | $ 1,995.00 | 3/2/2015 | $ 3,505.00 |
| | | 8/7/2017 | $ 3,115.00 | 3/16/2015 | $ 1,120.00 |
| | | 9/5/2017 | $ 1,995.00 | 3/30/2015 | $ 3,570.00 |
| | | 10/31/2017 | $ 5,246.00 | 4/13/2015 | $ 1,610.00 |
| | | 11/27/2017 | $ 350.00 | 4/13/2015 | $ 1,505.00 |
| | | 1/18/2018 | $ 3,250.00 | 4/27/2015 | $ 2,275.00 |
| | | 5/30/2018 | $ 5,386.00 | 5/11/2015 | $ 3,280.00 |
| | | 9/13/2018 | $ 6,156.00 | 5/18/2015 | $ 2,555.00 |
| | | 11/2/2015 | $ 1,890.00 | 5/28/2015 | $ 2,135.00 |
| | | | | 5/28/2015 | $ 1,155.00 |
| | | | | 6/15/2015 | $ 2,870.00 |
| | | | | 7/13/2015 | $ 1,995.00 |
| | | | | 7/22/2015 | $ 4,305.00 |
| | | | | 8/3/2015 | $ 8,050.00 |
| | | | | 8/3/2015 | $ 2,345.00 |
| | | | | 8/10/2015 | $ 4,690.00 |
| | | | | 8/25/2015 | $ 5,285.00 |
| | | | | 8/25/2015 | $ 2,730.00 |
| | | | | 8/31/2015 | $ 3,150.00 |
| | | | | 9/16/2015 | $ 5,215.00 |
| | | | | 10/13/2015 | $ 9,870.00 |
| | | | | 10/26/2015 | $ 6,405.00 |
| | | | | 7/13/2015 | $ 11,900.00 |
| | | | | 11/16/2015 | $ 3,535.00 |
| | | | | 11/16/2015 | $ 5,655.00 |
| | | | | 11/23/2015 | $ 770.00 |
| | | | | 12/14/2015 | $ 3,570.00 |
| | | | | 12/14/2015 | $ 2,485.00 |
| | | | | 12/28/2015 | $ 1,730.00 |
| | | | | 1/4/2016 | $ 3,850.00 |
| | | | | 2/17/2016 | $ 1,435.00 |
| | | | | 2/17/2016 | $ 6,300.00 |
| | | | | 2/17/2016 | $ 1,225.00 |
| | | | | 2/22/2016 | $ 1,575.00 |
| | | | | 3/7/2016 | $ 2,660.00 |
| | | | | 3/14/2016 | $ 1,540.00 |
| | | | | 3/21/2016 | $ 2,730.00 |
| | | | | 3/31/2016 | $ 3,710.00 |
| | | | | 3/31/2016 | $ 3,185.00 |
| | | | | 4/11/2016 | $ 4,620.00 |
| | | | | 4/19/2016 | $ 1,365.00 |
| | | | | 4/25/2016 | $ 2,170.00 |
| | | | | 5/9/2016 | $ 2,765.00 |
| | | | | 5/16/2016 | $ 980.00 |
| | | | | 6/6/2016 | $ 7,140.00 |
| | | | | 6/13/2016 | $ 2,485.00 |
| | | | | 6/20/2016 | $ 735.00 |

# EXHIBIT A
# SKYDIVE SPACELAND

| 90-DAY PREFERENTIAL TRANSFERS 08/10/2018-11/09/2018 | | TWO-YEAR FRAUDULENT TRANSFERS 11/08/2016-11/09/2018 | | FOUR-YEAR VOIDABLE TRANSFERS 11/10/2014-11/09/2018 | |
|---|---|---|---|---|---|
| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
| | | | | 6/27/2016 | $ 1,820.00 |
| | | | | 7/6/2016 | $ 1,330.00 |
| | | | | 7/19/2016 | $ 6,615.00 |
| | | | | 8/8/2016 | $ 9,205.00 |
| | | | | 8/17/2016 | $ 4,480.00 |
| | | | | 8/30/2016 | $ 175.00 |
| | | | | 9/12/2016 | $ 3,570.00 |
| | | | | 9/19/2016 | $ 3,185.00 |
| | | | | 10/3/2016 | $ 2,695.00 |
| | | | | 10/17/2016 | $ 4,130.00 |
| | | | | 11/7/2016 | $ 3,815.00 |
| | | | | 11/15/2016 | $ 5,215.00 |
| | | | | 11/28/2016 | $ 2,485.00 |
| | | | | 12/12/2016 | $ 4,620.00 |
| | | | | 1/26/2017 | $ 3,675.00 |
| | | | | 2/22/2017 | $ 3,185.00 |
| | | | | 4/3/2017 | $ 5,885.00 |
| | | | | 5/25/2017 | $ 7,245.00 |
| | | | | 6/2/2017 | $ 2,135.00 |
| | | | | 6/27/2017 | $ 4,025.00 |
| | | | | 7/19/2017 | $ 1,995.00 |
| | | | | 8/7/2017 | $ 3,115.00 |
| | | | | 9/5/2017 | $ 1,995.00 |
| | | | | 10/31/2017 | $ 5,246.00 |
| | | | | 11/27/2017 | $ 350.00 |
| | | | | 1/18/2018 | $ 3,250.00 |
| | | | | 5/30/2018 | $ 5,386.00 |
| | | | | 9/13/2018 | $ 6,156.00 |
| | | | | 11/2/2015 | $ 1,890.00 |
| | | | | | |
| | | | | | |
| TOTAL | $ 1,890.00 | TOTAL | $ 67,853.00 | TOTAL | $ 285,628.00 |

## CERTIFICATE OF SERVICE

This is to certify that I have this day caused to be served a true and correct copy of the

foregoing Amended Complaint to Avoid and Recover Transfers upon those parties listed below

by depositing same in the United States first class mail in a properly addressed envelope with

adequate postage affixed thereon to assure delivery to:

> Skydive Spaceland
> Stephen Boyd, Sr.
> Registered Agent
> PO Box 1121
> Rosharon, TX  77583

This $^{30}$th day of December, 2020.

_____/s/ Gregory D. Ellis_____
Gregory D. Ellis
Georgia Bar No. 245310

LAMBERTH, CIFELLI, ELLIS
& NASON, P.A.
6000 Lake Forrest Drive, N.W., Ste. 435
Atlanta, GA 30328
(404) 262-7373